UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,	:

    - v -	:	**MEMORANDUM DECISION**

JESUS MENDEZ,	:	96 Cr. 317 (DC)

       Defendant.	:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**    AUDREY STRAUSS, ESQ.
United States Attorney for the
Southern District of New York
    By:    Alexandra Rothman, Esq.
           Andrew Thomas, Esq.
           Assistant United States Attorneys
One Saint Andrew's Plaza
New York, NY 10007

FEDERAL DEFENDERS OF NEW YORK, INC.
Attorneys for Defendant JESUS MENDEZ
    By:    Yuanchung Lee, Esq.
52 Duane Street - 10th Floor
New York, New York 10007

**CHIN, Circuit Judge**

On May 12, 2020, the Second Circuit granted defendant Jesus Mendez leave to file a second or successive motion pursuant to 28 U.S.C § 2255 to vacate certain counts of conviction. *See* Dkt. No. 185. Mendez now moves to vacate his sentence, arguing that two of his counts of conviction -- Counts Thirteen and Fourteen -- cannot stand in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Barrett*,

937 F.3d 126 (2d Cir. 2019). *See* Dkt. No. 196 at 9-11. The government opposes. Dkt. No. 199. For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

A. **The Facts**

The factual history of this case is set forth in detail in prior decisions of the Second Circuit. *See United States v. Morales*, 185 F.3d 74, 78-80 (2d Cir. 1999); *United States v. Diaz*, 25 F. App'x 27, 28-29 (2d Cir. 2001). The relevant facts are summarized below.

Mendez was a member of a group called the "Park Avenue Boys" or "Webster Avenue Posse." *Morales*, 185 F.3d at 79. During 1987 and 1988, the Park Avenue Boys conducted a number of armed robberies around 187th Street and Webster Avenue in the Bronx, *id.*, including a robbery at 917 Castle Hill Avenue, during which the leader of the group, Jose Aponte, shot and killed the store's owner, and another member of the group, Ricardo Morales, shot and wounded an employee. *Id.*

After being released from prison for his role in the Castle Hill Avenue shooting, Mendez took part in several armed robberies in the same neighborhood, including the robberies of Franklin Vargas and Bryan Wilson while they were working in stores. *Id.* at 83. The robbery of Wilson resulted in his being shot by either Mendez or Morales. *Id.* The final two robberies that Mendez took part in culminated in his arrest in this case. *Id.* at 79. On March 14, 1996, Mendez and two other individuals,

2

Morales and Angel Diaz, all armed, approached two men on 178th Street and Arthur Avenue, and stole jewelry and car keys from one of the men. *Diaz*, 25 F. App'x at 29. They then stole the man's BMW and drove towards the Grand Concourse, stopping briefly on the way to rob another man. *Id.*

After receiving a report about the carjacking, two New York City Police Officers, John McGreal and Kevin Gillespie, spotted the BMW and called for help. *Id.* A second unmarked police car blocked the BMW's path at 183rd Street and Grand Avenue, and the car driven by McGreal and Gillespie pulled up behind the BMW. *Id.* As McGreal and Gillespie exited their car, so did Mendez, Morales, and Diaz. *Id.* Diaz fired two shots at Gillespie, killing him. *Id.* Other officers eventually caught Mendez, Morales, and Diaz and arrested them. *Id.* Mendez was carrying items belonging to the robbery victims at the time of his arrest. *Id.*

B. **Prior Proceedings**

1. **Indictment, Jury Trial, and Sentencing**

On December 3, 1996, the government filed a superseding indictment against Morales and Mendez, charging twenty-six counts. *See* Dkt No. 106; Dkt. No. 129. As five of the twenty-six counts were not at issue, a redacted indictment was used at trial: Counts One and Two charged Morales and Mendez with participating and conspiring to participate in a racketeering enterprise through predicate acts of robbery

3

and murder in violation of the RICO statute, 18 U.S.C. § 1962(c)-(d)[1]; Counts Three through Eight charged obstructing commerce and conspiring to obstruct commerce by robbing stores and individuals in violation of the Hobbs Act, 18 U.S.C. § 1951 -- specifically, Counts Five and Seven charged conspiracy to commit Hobbs Act robbery, and Counts Six and Eight charged Hobbs Act robbery, *see* Dkt. No. 196 at 6 (quoting Ind. S3 96 Cr. 317 (DC)); Counts Nine and Ten charged violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959; Count Eleven charged Mendez alone with other violent crimes in aid of racketeering, specifically the attempted murder of the two officers on March 14, 1996, in violation of 18 U.S.C. § 1959; Counts Twelve through Fourteen charged using and carrying firearms during and in relation to acts of racketeering and Hobbs Act violations in violation of 18 U.S.C. § 924(c) -- specifically, Count Thirteen charged using and carrying a firearm during a crime of violence, that is, the conspiracy and substantive robbery charged in Counts Five and Six, and Count Fourteen charged using and carrying a firearm during a crime of violence, that is, the conspiracy and substantive robbery charged in Counts Seven and Eight, *see* Dkt. No. 196 at 6 (quoting Ind. S3 96 Cr. 317 (DC))[2]; Counts Fifteen through Seventeen charged

---

[1] The predicate acts alleged included conspiracy to rob and robbery of several grocery stores, individuals, and a restaurant, as well as the felony-murder of a store employee and attempted murder of a store employee during the robbery at 917 Castle Hill, and the felony-murder of Officer Gillespie on March 14, 1996, and the attempted murders of two other officers that same day.

[2] Counts Thirteen and Fourteen were Counts Sixteen and Seventeen in the unredacted indictment.

using and carrying firearms during and in relation to other acts of racketeering in violation of 18 U.S.C. § 924(c); Count Eighteen charged using and carrying a firearm during and in relation to the felony-murder of Gillespie in violation of 18 U.S.C. § 924(c); Count Nineteen charged Mendez alone with using and carrying a firearm during and in relation to the attempted murders of the other two officers in violation of 18 U.S.C. § 924(c); Counts Twenty and Twenty-One charged Mendez and Morales with possessing firearms as convicted felons in violation of 18 U.S.C. § 922(g)(1).

Trial began on April 7, 1997. I instructed the jury that although Counts Thirteen and Fourteen alleged two predicate "crimes of violence," they "need only find one or the other." Trial Transcript ("TT.") at 1513. I stated that both Hobbs Act robbery conspiracy and Hobbs Act robbery constituted crimes of violence as a matter of law. TT. at 1437. The verdict form repeated the substance of the Count Thirteen and Fourteen charges but did not indicate which underlying offenses were the predicates those charges. *See* Dkt. No. 196 at 8. On May 1, 1997, the jury convicted Mendez of Counts One and Two, and fifteen other counts involving Hobbs Act violations (including Counts Five, Six, Seven, and Eight), violent acts in aid of racketeering, the use and carrying of a firearm during and in relation to a crime of violence (including Counts Thirteen and Fourteen), and the possession of a firearm after having been convicted of a felony. *Morales*, 185 F.3d at 79. On August 13, 1997, I sentenced Mendez

to a term of life imprisonment plus 125 years. *Id.* at 80. I also imposed on Mendez a five-year term of supervised release. *Id.*

On July 26, 1999, the Second Circuit reversed the racketeering convictions and the convictions dependent upon the racketeering convictions but affirmed all other convictions. *Id.* at 85. The Second Circuit then remanded the case for resentencing. *Id.* As recommended by the Probation Department in its pre-sentence report, I imposed the maximum sentences on each of the remaining counts of conviction and required that the sentences be served consecutively, for a total term of incarceration of 110 years. *Diaz*, 25 F. App'x at 30. On November 28, 2001, the Second Circuit affirmed the modified judgment. *Id.* at 31.

### 2. Post-Appeal Motions

On May 1, 2003, I denied Mendez's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for ineffective assistance of counsel. *Mendez v. United States*, No. 02 CIV. 10265 (DC), 2003 WL 2006603, at *2 (S.D.N.Y. May 1, 2003). Mendez appealed to the Second Circuit, which vacated this judgment and found that certain of Mendez's claims warranted further consideration. *See Mendez v. United States*, 379 F. Supp. 2d 589, 592 (S.D.N.Y. 2005). On remand, I again denied Mendez's motion. *Id.* at 599.

In May 2020, Mendez moved in the Second Circuit for leave to file a successive petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §

2255 on the basis of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). The Second Circuit granted the request. *Mendez v. United States*, 16-1658 (2d Cir. May 12, 2020), Dkt. No. 47.

3. **The Instant Motion**

In his instant § 2255 motion, Mendez alleges that his Count Thirteen and Fourteen convictions are unconstitutional in light of *Davis*. Dkt. No. 196. The government filed its opposition to the motion on August 3, 2020. Dkt. No. 199.

**DISCUSSION**

Mendez argues that his convictions for Counts Thirteen and Fourteen cannot stand in light of *Davis* because Counts Five and Seven, the Hobbs Act robbery conspiracy counts, have been rendered invalid predicates for a § 924(c) conviction, and it is unclear whether the jury based the § 924(c) convictions on Counts Five or Six and Seven or Eight. I am not persuaded.

1. **Applicable Law**

Relief pursuant to 28 U.S.C. § 2255 is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks and citation omitted). To obtain collateral relief where no contemporaneous objection was made, a defendant must show "actual prejudice resulting from the errors of which he

7

complains." *United States v. Frady*, 456 U.S. 152, 167–68 (1982) (internal quotation marks omitted).

In *Davis*, the Supreme Court held that § 924(c)(3)(B) (the residual clause) was unconstitutionally vague. 139 S. Ct. at 2336. Following this decision, the Second Circuit ruled that conspiracy to commit Hobbs Act robbery was no longer a valid § 924(c) predicate, because it could not qualify as a crime of violence without the residual clause. *Barrett*, 937 F.3d at 128. Hobbs Act robbery, however, is still a valid predicate for § 924(c) convictions. *See United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2010) (holding that Hobbs Act robbery constitutes a crime of violence).

The Second Circuit has held that "§ 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson v. United States*, 779 F.3d 125, 129-30 (2d Cir. 2015) (upholding § 924(c) conviction even though conviction on predicate crime (bank robbery) was vacated, as there was legally sufficient proof that defendant committed the predicate crime). And, specifically, even where Hobbs Act conspiracy had been the predicate crime, the Second Circuit has upheld a § 924(c) conviction where there was an alternative predicate crime. *See United States v. Dussard*, 967 F.3d 149, 157 (2d Cir. 2020) (upholding § 924(c) conviction following guilty plea to firearm possession with Hobbs Act conspiracy, even though *Davis* and *Barrett* rendered Hobbs Act conspiracy an invalid predicate, where record

8

made clear that defendant also possessed firearm during and in relation to a drug trafficking crime, which could serve as a predicate).

2.  **Application**

While Mendez correctly argues that under *Davis* and *Barrett*, Counts Five and Seven are no longer valid predicate offenses for a § 924(c) conviction, the record is clear that there are alternative valid predicates: Mendez's convictions on Counts Six and Eight for Hobbs Act Robbery. Mendez argues that because I instructed the jury that it need not find both predicates, relief is warranted as the "the error had 'substantial and injurious effect or influence in determining the jury's verdict.'" Dkt. No. 196 at 15 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993)). This argument is unavailing. Counts Thirteen and Fourteen -- the 924(c) counts -- charged Mendez with possessing a firearm during a crime of violence, and Hobbs Act robbery remains a crime of violence. Mendez was also convicted on Counts Six and Eight, which charged him with Hobbs Act robbery; those convictions remain valid predicates for Counts Thirteen and Fourteen. Even though the jury was instructed that it was not required to find both predicates for each of Counts Thirteen and Fourteen, it did so. Moreover, as Mendez did not make a contemporaneous objection, he is required to show actual prejudice. *See Frady*, 456 U.S. at 167–68. Mendez has not shown any prejudice from the jury instruction, as he was separately convicted on both the Hobbs Act conspiracy counts

(Counts Five and Seven) and both the substantive Hobbs Act robbery counts (Counts Six and Eight). The latter are clearly valid predicates.

## **CONCLUSION**

For the reasons set forth above, Mendez has failed to show a basis for relief under 28 U.S.C. § 2255. Accordingly, his motion is DENIED. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated: New York, New York
June 2, 2021

        s/DC
DENNY CHIN
United States Circuit Judge
Sitting by Designation